UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------- x

MARCUS R.,                                    :
                                              :        **RULING & ORDER ON**
                              Plaintiff,       :        **PLAINTIFF'S MOTION**
                                              :        **TO REVERSE OR**
         -against-                             :        **REMAND AND**
                                              :        **DEFENDANT'S MOTION**
MARTIN O'MALLEY,                               :        **TO AFFIRM DECISION**
Commissioner of Social Security,[1]            :        **OF COMMISSIONER**
                                              :
                              Defendant.        x        3:23-CV-00960 (VDO)

-------------------------------------------------------------

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Marcus R.[2] has filed an administrative appeal under 42 U.S.C. §§ 405(g) and

1283(c)(3) against the Commissioner of Social Security ("Defendant" or "Commissioner").

He seeks to reverse the decision of the Commissioner denying his claim for Disability

Insurance Benefits ("DIB"), or, in the alternative, to remand the case for a new hearing. (ECF

No. 21.) The Commissioner has moved to affirm the decision. (ECF No. 25.)

For the reasons set forth below, the Court **denies** Plaintiff's motion and **grants**

Defendant's motion.

## I.      BACKGROUND

The Court assumes familiarity with Plaintiff's medical history, as summarized in both

Plaintiff's Memorandum in Support of his Motion to Reverse the Commissioner's Decision

---

[1] On December 20, 2023, Martin O'Malley replaced Kilolo Kijakazi as Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of Court is directed to substitute Martin O'Malley for Kilolo Kijakazi in this action.

[2] Plaintiff is identified by his first name and last initial pursuant to the District's January 8, 2021 Standing Order. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan 8, 2021).

(ECF No. 21-1) and Defendant's Memorandum in Support of his Motion to Affirm the Commissioner's Decision (ECF No. 25-1). The Court adopts and incorporates both statements of fact by reference.

On February 5, 2021, Plaintiff applied for a period of DIB. (Certified Administrative Record ("R.") at 184.[3]) Plaintiff's claim was denied on October 7, 2021, and again on January 6, 2022, upon reconsideration. (R. at 17.) Plaintiff then filed a written request for a hearing before an Administrative Law Judge ("ALJ"). (R. at 17.) Plaintiff, his representative (Olia Yelner), and an impartial vocational expert (Julian Shields) participated in a telephonic hearing before an ALJ (Judge I. K. Harrington) on July 19, 2022. (R. at 35.)

On October 19, 2022, the ALJ issued a decision, finding Plaintiff not to be disabled under sections 216(i) and 223(d) of the Social Security Act. (R. at 18.) The ALJ found that Plaintiff had severe physical and mental impairments and nonsevere impairments but determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work under 20 C.F.R. § 404.1567. (R. at 20–27.) The ALJ concluded that Plaintiff could perform his past work as a home attendant, as well as other jobs in the national economy. (R. at 25–27.) The Appeals Council denied Plaintiff's request for review. (R. at 3.)

Plaintiff filed the instant action on July 19, 2023. (ECF No. 1.) On November 27, 2023, Plaintiff moved to reverse the Commissioner's decision. (ECF No. 21.) Defendant cross-moved on January 26, 2024. (ECF No. 25.)

---

[3] "R." refers to the Certified Administrative Record filed at ECF No. 14. The Court cites to the pagination on the bottom right-hand corner of the record, as opposed to the CM/ECF pagination.

## II.   **LEGAL STANDARD**

"Congress has authorized federal courts to engage in limited review of final SSA disability benefit decisions." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022); *see also* 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Therefore, a court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks and citation omitted). "'Substantial evidence' is evidence that amounts to 'more than a mere scintilla,' and has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre*, 758 F.3d at 149.

To be disabled, thus qualifying a claimant to benefits, a claimant must have an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(a); *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013). In determining whether a claimant is disabled, "the agency follows a five-step process detailed in 20 C.F.R. § 404.1520(a)(4)(i)–(v)[,]" as set forth below:

> Under the five-step process, the Commissioner determines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe physical or mental impairment, or combination of severe impairments; (3) whether the impairment (or combination) meets or equals the severity of one of the impairments specified in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"); (4) whether, based on an assessment of the claimant's residual functional capacity, the claimant can perform any of her past relevant work; and (5) whether the claimant can make an adjustment to other work given the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i)–(v).

*Schillo*, 31 F.4th at 70. The Commissioner considers whether "the combined effect of any such impairment . . . would be of sufficient severity to establish eligibility for Social Security benefits." 20 C.F.R. § 404.1523. While the finding of whether a claimant is disabled is reserved to the Social Security Administration ("SSA"), the SSA must consider an opinion provided by a claimant's treating physician and then draw its own conclusions as to whether the data in that opinion indicate disability. *Id.* at 71 (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).

## III.   **DISCUSSION**

Plaintiff makes two arguments with respect to the ALJ's decision. First, Plaintiff contends that the ALJ erred in formulating the RFC. Plaintiff claims that (1) he cannot perform medium work, (2) his cane is medically necessary, (3) the ALJ did not address his lingering motor problems, and (4) the ALJ did not sufficiently justify the RFC. Second, Plaintiff argues that the ALJ erred in finding that Plaintiff could return to his past work as a home attendant.

As discussed below, the Court denies Plaintiff's motion. As to the first argument, substantial evidence supports the ALJ's RFC determination. As to the second argument, though the ALJ likely erred in finding that Plaintiff could return to his past work as a home attendant, that error does not merit remand. Had the ALJ not erred at step four, the ALJ would

nonetheless have concluded that Plaintiff could perform other jobs in the national economy.

Because the error was harmless, the Court does not remand for further proceedings.

**A.     Substantial Evidence Supports the ALJ's Conclusion that Plaintiff Could Perform Medium Work Pursuant to 20 C.F.R. § 404.1567(c).**

Between steps three and four, an ALJ determines "whether, despite the claimant's severe impairment, he . . . has residual functional capacity to perform his . . . past work." *Shaw v. Chater,* 221 F.3d 126, 132 (2d Cir. 2000) (citing *DeChirico v. Callahan,* 134 F.3d 1177, 1179–80 (2d Cir. 1998)).

The RFC "is what the claimant can still do despite the limitations imposed by his impairment." *Greek v. Colvin*, 802 F.3d 370, 374 n.2 (2d Cir. 2015); *see also* 20 C.F.R. § 416.945(a)(1). An ALJ makes an RFC determination "based on all the relevant evidence in [the] case record[,]" including "all of the relevant medical and other evidence." 20 C.F.R.  § 416.945(a)(1), (3). The RFC, however, need not "perfectly correspond with any of the opinions of medical sources[.]" *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Id.*

Here, the ALJ found that Plaintiff could perform "medium work" pursuant to 20 C.F.R. § 1567(c). (R. at 22.) Medium work involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 1567(c). The ALJ limited Plaintiff to "frequent balancing, stooping, kneeling, crouching, crawling, and climbing of ramps, stairs, ladders, ropes or scaffolds." (R. at 22.) In addition, the ALJ limited Plaintiff to "frequent reaching forward and laterally with the bilateral upper extremities" and noted that Plaintiff "requires use of a cane when outdoors." (R. at 22.)

### 1.      Plaintiff's Physical Impairments

Plaintiff first argues that the ALJ "significantly minimized" Plaintiff's physical impairments in his RFC determination. (Pl. Mem., ECF No. 21-1, at 23.) Plaintiff notes that these impairments were severe enough to require skilled physical therapy. (*Id*.) He further argues that his "weakness did not improve" through physical therapy: in both April 2022 and August 2022, a physician noted this "weakness" in his medical records. (*Id*. (citing R. at 1360, 1355).) In response, Defendant points to evidence on the record supporting the ALJ's determination. (Def. Mem., ECF No. 25-1, at 8–11.)

Some evidence suggests that Plaintiff still suffered from physical impairments even after he completed physical therapy; however, substantial evidence supports the ALJ's determination that Plaintiff could perform medium work and that "further limitations are not warranted because Plaintiff made significant improvements after his stroke" in December 2020. (R. at 24.) In Plaintiff's final physical therapy sessions in March and April 2021, Plaintiff reported that he was "walking without the cane" and feeling "pretty steady." (R. at 1074, 1098.) His physical therapist noted that he made "very good gains" and met all long-term and short-term goals. (R. at 1106.) She concluded that his balancing and functional abilities were within a normal range. (R. at 1105.) On June 23, 2021, a state agency physician reviewed Plaintiff's record, including the notes from his hospital stay in 2020 and his physical therapy sessions in 2021, and concluded that Plaintiff could engage in most of the activities associated with medium work (*e.g*., stand or walk for six of the eight hours in a typical workday, lift 50 pounds occasionally, and lift 25 pounds frequently). (R. at 73.) In his view, Plaintiff could frequently climb, balance, stoop, kneel, crawl, and reach in front and/or laterally. (R. at 74.)

Primary care treatment notes from October and December 2021 make no mention of any balance or gait problems. (R. at 1032, 1252.) And when Plaintiff's claim was first denied in 2021, another state agency physician reviewed Plaintiff's file, including notes from recent primary care visits. That second physician, Dr. Gregory McCormack, also determined that Plaintiff could occasionally lift and carry up to 50 pounds and frequently lift and carry up to 25 pounds. (R. at 85.) His assessment mirrored the first physician's assessment: Plaintiff could frequently climb, balance, stoop, kneel, crawl, and reach in front and/or laterally. (R. at 85.)

However, as noted above, some medical evidence from 2021 and 2022 lends credence to Plaintiff's argument. In September 2021, when Plaintiff was hospitalized for syphilis, physicians noted a "slight limp." (R. at 1380.) Physicians also observed "weakness" at Plaintiff's primary care appointments in February, April, and August 2022. (R. at 1364, 1359, 1355.) And at the primary care appointment in August 2022, Plaintiff reported that his gait was "unsteady." (R. at 1355.) Though this evidence bolsters Plaintiff's argument, it does not allow the Court to reverse the ALJ. After all, the RFC need not "perfectly correspond with any of the opinions of medical sources[.]" *Matta*, 508 F. App'x at 56. "Genuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Here, the ALJ acknowledged positive findings for weakness and Plaintiff's self-reported "unsteady gait" in 2022. (R. at 24.) The ALJ resolved the conflict by concluding that Plaintiff made "significant improvements" after his stroke. (R. at 24.)

Plaintiff further argues that he "cannot perform the demands" of medium work, emphasizing the balance and strength problems he faced in 2020 and 2021. (Pl. Mem. at 21.) Indeed, in March 2021, his physical therapist wrote that he could "carry no more than 20lbs of laundry up and down his stairs safely at this time." (*Id*. at 8 (citing R. at 629).) Plaintiff cites

to evidence, however, from the period immediately following his stroke. In March 2021, three months after the stroke, Plaintiff had not yet completed his physical therapy sessions. This evidence sheds little, if any, light on Plaintiff's mobility and strength at the time of his application. It does not undermine the ALJ's conclusion that Plaintiff made significant improvements after his stroke.

This Court may only reject the ALJ's decision if it finds that no reasonable factfinder could have come to such a conclusion. *Brault v. Soc. Sec. Admin.*, *Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). Here, reviewing the entire record, including two assessments from state agency physicians, the Court concludes that substantial evidence supports the ALJ's determination.

### 2.     Plaintiff's Cane Usage

Plaintiff also argues that the ALJ "misstated" Plaintiff's need for a cane in the RFC. The ALJ concluded that Plaintiff needs a cane only "when outdoors." (R. at 22.) In Plaintiff's estimation, however, he requires a cane "outside of his home, not merely outside." (Pl. Mem. at 24.) In response, Defendant argues that no medical documentation supports this claim. (Def. Mem. at 11.)

"'To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing[.]'" *Black v. Colvin*, No. 3:16-CV-1727 (MPS), 2017 WL 6485687, at *5 (D. Conn. Dec. 19, 2017) (quoting SSR 96-9P, 1996 WL 374185, at *7 (S.S.A. July 2, 1996)). A plaintiff bears the burden of proving that a cane is medically necessary. *Vanever v. Berryhill*, No. 16-CV-1034, 2018 WL 4266058, at *2 (W.D.N.Y. Sept. 6, 2018). A cane is not medically necessary simply because a plaintiff uses one or a medical professional observes such use. *Harry B. v. Comm'r of Soc. Sec.*, No. 3:20-CV-227 (ATB), 2021 WL 1198283, at *9

(N.D.N.Y. Mar. 30, 2021); *see also Joey A. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-244, 2022 WL 855584 (SALM), at *13 (D. Conn. Mar. 23, 2022). Once a plaintiff has put forward medical documentation establishing a need for a cane and the circumstances during which one is needed, an ALJ must "incorporate the [plaintiff's] use of the cane into the RFC" or use the medical records to evaluate whether the plaintiff needs a cane. *Gregory F. v. Comm'r of Soc. Sec.*, No. 19-CV-00481 (LJV), 2020 WL 7166738, at *5 (W.D.N.Y. Dec. 7, 2020).

Allusions to Plaintiff's cane appear throughout the record. Following Plaintiff's stroke in December 2020, a physician prescribed a cane (R. at 356, 391), and at his primary care appointments in the subsequent months, Plaintiff regularly reported using a cane. (*See, e.g.*, R. at 345.) In addition, when Plaintiff received home care after his hospital stay in September 2021, the agency prepared an initial health tracking sheet indicating that Plaintiff used a cane. (R. at 1286.) [4]

However, as noted above, Plaintiff stopped using a cane as he regained his strength and balance through physical therapy. By mid-April 2021, Plaintiff reported that he had gone "without the cane for 2-3 weeks." (R. at 1086.) He told his physical therapist several times that he could mow the lawn and complete other chores around the house. (R. at 740, 1101.) Several months later, when Plaintiff stopped receiving home care pursuant to his hospital stay in September 2021, the agency noted in his discharge sheet that Plaintiff could walk on even and uneven surfaces without an assistive device. (R. at 1341.) Plaintiff had primary care

---

[4] Plaintiff cites to notes from a home care appointment in October 2021 as evidence that he uses a "cane for distance." (Pl. Mem. at 24.) However, the full sentence in the record reads: "He reports that he uses a cane for distance." (R. at 1347.) A plaintiff's own report does not rise to the level of medical documentation. *See Polynice v. Colvin*, 576 F. App'x 28, 31 (2d Cir. 2014).

appointments in February and April 2022, but the notes from those appointments are silent regarding Plaintiff's cane. Ultimately, the state agency physicians who reviewed Plaintiff's file in 2021 and 2022 did not conclude that Plaintiff's cane was medically necessary. (R. at 73, 82.)

Though the ALJ failed to note that Plaintiff was prescribed a cane in 2020 and failed to make an explicit finding as to whether the cane was medically necessary, the ALJ incorporated Plaintiff's testimony about his cane usage into the RFC. During the telephonic hearing in 2021, Plaintiff told the ALJ, "I use the cane when I'm walking to the store or . . . a distance." (R. at 47.) In response to a follow-up question, Plaintiff explained that he only used the cane outdoors. (R. at 47.) The ALJ formulated an RFC that accounted for Plaintiff's testimony, though the ALJ did not need to consider Plaintiff's testimony as medical documentation. The ALJ also justified the limited incorporation of the cane into the RFC: "Further limitations are not warranted as records show that the claimant made significant improvements after his stroke[.]" (R. at 24.) *Cf. Gregory F.*, 2020 WL 7166738, at *5 (finding that the ALJ erred in failing either to evaluate whether the plaintiff needed a cane or incorporate cane usage in the RFC). The ALJ engaged in a thorough analysis of the relevant records, observing that Plaintiff walked without a cane in the spring of 2021. (R. at 24.) In sum, substantial evidence supports the ALJ's conclusion that Plaintiff did not need a cane indoors.[5]

---

[5] Plaintiff also takes issue with the ALJ's questioning during the administrative hearing, arguing that the ALJ "pressed him very hard" to state that he did not use a cane indoors. (Pl. Mem. at 24.) The transcript is muddled, but the Court cannot conclude that the ALJ "pressed" Plaintiff. When the ALJ first asked if Plaintiff used a cane indoors, Plaintiff responded: "Yeah, I'm . . . stubborn and hardheaded. You know, and I'm trying to get away without using it, but it doesn't work out." (R. at 47.) The ALJ asked the question a second time, to which Plaintiff responded, "Okay. Not— no, no." (R. at 47.) Plaintiff then repeated that same answer and added, "[N]ot indoors. Outside

### 3.    Plaintiff's Fine Motor Movement and Control

Next, Plaintiff argues that the ALJ failed to consider Plaintiff's "motor control and movement challenges." (Pl. Mem. at 25.) Plaintiff points to the notes of consultative examiner Dr. Julie Keen, who wrote that Plaintiff's processing speed scores "should be reviewed as possibly slightly negatively skewed, accounting for reported motor problems secondary to stroke." (R. at 1024.)

However, as Defendant rightly points out (Def. Mem. at 13), Dr. Keen did not observe or make any findings as to Plaintiff's motor problems—instead, Dr. Keen simply remarked that Plaintiff himself "reported altered motor control problems[.]" (R. at 1024.) Nothing in Dr. Keen's notes suggests that she witnessed these motor control problems firsthand, and Plaintiff does not contend that the ALJ mischaracterized or cherry-picked from Dr. Keen's notes.

Little else in the record supports Plaintiff's claim. He experienced some motor difficulties immediately after his stroke in December 2020 (R. at 372–73), but notes from primary care appointments in 2021 do not allude to persistent motor control problems. (*E.g.*, R. at 729.) In September 2021, during Plaintiff's hospital stay, physicians remarked that his "[m]otor function was intact." (R. at 1403, 1392.) Though primary care physicians noted in February, April, and August 2022 that Plaintiff had "post-CVA residual weakness" (R. at 1356, 1360, 1364), they did not elaborate on that observation or identify the site of the weakness. Plaintiff does not appear to have complained of motor problems at those appointments. Further, the two state agency physicians who reviewed the record concluded that Plaintiff did not suffer

---

only." (R. at 47.) This exchange, with its interruptions and repetitions, does not suggest that the ALJ pressured Plaintiff "to disavow his medically necessary cane." (Pl. Mem. at 24.) *Cf. Ventura v. Shalala*, 55 F.3d 900, 903–04 (3d Cir. 1995) (holding that a plaintiff was entitled to a new hearing before another ALJ in light of the first ALJ's "coercive" line of questioning).

from manipulative limitations (save for frequent reaching, which appears in the RFC). (R. at 74, 86.)

Assessing the record in its entirety, the Court concludes that the ALJ did not err in formulating the RFC. Substantial evidence suggests that motor problems did not plague Plaintiff in 2021 and 2022, including notes from primary care appointments and state agency physicians. *See Keller v. Comm'r of Soc. Sec.*, 394 F. Supp. 3d 345, 352 (W.D.N.Y. 2019) (finding that the ALJ did not err in concluding that the plaintiff was not disabled when the evidence indicated that her undisputed gait difficulties and weakness improved significantly within a year).

### 4.     The ALJ's Narrative Discussion of the Evidence

Finally, Plaintiff argues that the ALJ did not sufficiently explain the conclusion that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence." (Pl. Mem. at 26.) More specifically, Plaintiff contends that the ALJ failed to provide a "narrative discussion" supporting the determination. Indeed, an RFC must "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence[.]" *Cobb v. Astrue*, 613 F. Supp. 2d 253, 258 (D. Conn. 2009) (quoting SSR 96-8p, 1996 WL 374184, at *7).

Plaintiff's argument fails. The ALJ set forth the RFC determination (R. at 22), then assessed the evidence both supporting the RFC and cutting against it. (R. at 22–25.) The ALJ dedicated three pages of the decision to this narrative discussion. The ALJ noted Plaintiff's symptoms immediately after the stroke, then traced Plaintiff's physical improvements through physical therapy. (R. at 22–25.) Though the ALJ did not refer to every primary care

appointment documented in the record, the ALJ was not required to do so. *See Brault*, 683 F.3d at 448 ("[A]n ALJ is not required to discuss every piece of evidence submitted."). The ALJ evaluated the bulk of the medical documentation and provided a rationale for the RFC determination. "Even assuming, *arguendo*, that the ALJ failed to provide an express rationale for his conclusions, we would not be prevented from upholding them so long as we are 'able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence.'" *Ryan on Behalf of V.D.C. v. Comm'r of Soc. Sec.*, No. 21-2947-CV, 2022 WL 17933217, at *2 (2d. Cir. Dec. 27, 2022) (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) (per curiam)). Here, the ALJ's analysis "provided an adequate basis for meaningful judicial review," satisfying the ALJ's obligations under SSR 96-8p. *See Frazier v. Comm'r of Soc. Sec.*, No. 16-CV-4320 (AJP), 2017 WL 1422465, at *15 n.29 (S.D.N.Y. Apr. 20, 2017) (rejecting the argument that an ALJ failed to provide a "narrative discussion explaining the evidentiary basis for the RFC" where three pages of narrative discussion followed the RFC determination).

Plaintiff notes that the ALJ cited to medical evidence that supports Plaintiff's claim— for instance, the ALJ observed that Plaintiff had "weakness in his right arm and leg [and] abnormal ranges of motion (ROM) in the right shoulder . . . as well as decreased balance, altered gait, and trouble with prolonged standing and walking[.]" (Pl. Mem. at 26 (citing R. at 23).) The ALJ did indeed make note of those medical records; however, those records were made in January 2021, a month after Plaintiff's stroke. At that time, Plaintiff had only recently begun physical therapy. Thus, though the ALJ acknowledged evidence that supported Plaintiff's claim, the ALJ also placed that evidence in its context. The ALJ was not required to disregard evidence that physical therapy resolved many of Plaintiff's symptoms.

**B.      The ALJ's Erroneous Conclusion that Plaintiff Could Perform His Past Work Does Not Merit Remand.**

Plaintiff argues that the ALJ erred in finding that Plaintiff could perform his past work as a home attendant. (Pl. Mem. at 27.) In response, Defendant contends that remand is not appropriate even when an ALJ errs at step four if substantial evidence supports the ALJ's determinations at step five. (Def. Mem. at 15–16.)

At step four, the ALJ found that claimant could perform his past relevant work as a home attendant. (R. at 25.) The ALJ noted that Plaintiff performed this work at a "semi-skilled" level, which was consistent with the testimony of the vocational expert. (R. at 25, 58.) However, in the RFC determination, the ALJ limited Plaintiff to "carrying out simple instructions and [completing] simple tasks in two-hour increments with no strict adherence to time or production requirements." (R. at 22.) The Court concludes that the ALJ thereby restricted Plaintiff to *unskilled* work. *See* 20 C.F.R. § 404.1568(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."); SSR 85-15, 1985 WL 56857, at *4 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions[.]").

The ALJ therefore made two contradictory determinations: first, that Plaintiff could perform only unskilled work, and second, that Plaintiff could return to his past "semi-skilled" work as a home attendant. The Court concludes that the ALJ erred in finding that Plaintiff could perform his past work as a home attendant, absent further explanation. *See Pantoja Santiago v. Comm'r of Soc. Sec.*, No. 18-CV-1226 (KPF) (BCM), 2019 WL 6831533, at *21 (S.D.N.Y. July 23, 2019) ("Having determined that plaintiff was capable of only simple

instructions and tasks, the ALJ was required to provide an explanation, supported by substantial evidence, for why she was simultaneously capable of *some* higher level jobs . . . that fall into the semi-skilled range. . .") (internal quotation marks omitted), *report and recommendation adopted*, 2019 WL 3798055 (S.D.N.Y. Aug. 13, 2019).

Identification of an ALJ's error at step four, however, does not always trigger remand. If the ALJ would likely have reached the same disability determination even without the error, then remand is unnecessary. *Wetzel v. Berryhill*, 783 F. App'x 44, 47 (2d Cir. 2019). Further, the Second Circuit has held that when substantial evidence supports an ALJ's conclusion at step five, a court should not remand due to an ALJ's error at step four. *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 890 (2d Cir. 2007).

At step five, the ALJ determined that Plaintiff could perform three *unskilled* jobs in the national economy. (R. at 27.) The ALJ cited a vocational expert's testimony that an individual with Plaintiff's limitations could hold these positions. (R. at 25, 58–59.) Even if the ALJ had not erred at step four, the ALJ would still have concluded that Plaintiff could perform these unskilled jobs. Nothing in the briefing suggests otherwise. In addition, Plaintiff does not challenge the ALJ's analysis at step five. Because Plaintiff has failed to raise the issue in his brief, the Court does not address it in full here. *See Burke v. Kijakazi*, No. 3:21-CV-01371 (KAD), 2022 WL 2193494, at *3 n.13 (D. Conn. June 17, 2022) (finding remand unnecessary where the plaintiff failed to argue that, absent the ALJ's error at step four, she would have been unable to perform other jobs in the national economy). In sum, despite the ALJ's error at step four, the Court declines to remand the case for further proceedings.

**IV.** **<u>CONCLUSION</u>**

For these reasons, the Court **grants** the Commissioner's motion to affirm (ECF No. 25) and **denies** Plaintiff's motion to reverse or remand the Commissioner's decision (ECF No. 21). The Clerk of Court is directed to enter judgment in favor of the Commissioner and close the case.

<b>SO ORDERED.</b>

Hartford, Connecticut
August 28, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge